IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN
AND FOR BROWARD COUNTY, FLORIDA

JOHN DOE,

*Plaintiff*,

Case No. CACE-25-012259

v.

SCHOOL BOARD OF BROWARD COUNTY,

*Defendant*.

_____/

## MOTION FOR LEAVE TO PROCEED ANONYMOUSLY

COMES NOW Plaintiff, John Doe, by and through undersigned counsel, and respectfully moves this Honorable Court to for leave to proceed under a pseudonym and in support thereof states as follows:

### I.    BACKGROUND

Plaintiff John Doe brings this action against the School Board of Broward County asserting claims for negligence, intentional infliction of emotional distress, and violations of his federal civil rights under 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964. This case arises from deeply personal and highly sensitive events involving fabricated allegations of sexual assault of a minor and the disclosure of Plaintiff's sexual orientation—matters that expose him to severe reputational harm, public scrutiny, and potential threats to his safety and wellbeing.

In light of the extraordinary privacy interests at stake and the risk of irreparable harm—including deterioration of Plaintiff's mental and physical health—Plaintiff respectfully seeks leave to proceed under a pseudonym. Permitting pseudonymous filing will allow this litigation to

**Exhibit A**

1

NOT AN OFFICIAL COPY – PUBLIC ACCESS – NOT AN OFFICIAL COPY

move forward while protecting Plaintiff from unnecessary humiliation, harassment, and stigmatization.

## II.  LEGAL STANDARD

Although Florida courts favor transparency in judicial proceedings, they also recognize that openness must yield when outweighed by compelling privacy concerns or constitutional rights. *See Barron v. Fla. Freedom Newspapers, Inc.*, 531 So. 2d 113, 118 (Fla. 1988). As the Florida Supreme Court explained in *Barron*, it is the content of the subject matter that determines whether a privacy interest exists, and closure should be permitted. *Id.*

Florida courts have expressly acknowledged that pseudonymous litigation is appropriate in exceptional circumstances. *See Doe v. DeSantis*, 390 So. 3d 1245, 1249 (Fla. 1st DCA 2024), *reh'g denied* (Aug. 2, 2024).

Moreover, the Florida Constitution guarantees a strong right of privacy—even more robust than its federal counterpart. *See Vazzo v. City of Tampa*, 415 F. Supp. 3d 1087, 1098 (M.D. Fla. 2019), *aff'd sub nom. Vazzo v. City of Tampa, Florida*, 2023 WL 1466603 (11th Cir. Feb. 2, 2023). This right is considered fundamental and is subject to strict scrutiny. See *7020 Entm't, LLC v. Miami-Dade Cnty.*, 519 F. Supp. 3d 1094, 1104 (S.D. Fla. 2021) ("Florida's right to privacy is broader in scope than the implied federal right of privacy").

## III.  ARGUMENT

The Defendant, as a public school board, is indisputably a governmental entity. *See* Fla. Stat. § 768.28(2); Fla. Stat. § 1001.32; Art. IX, § 4, Fla. Const.; *S.S. v. Sch. Bd. of Sarasota Cnty.*, 357 So. 3d 802, 804 (Fla. 2d DCA 2023) ("[t]he School Board, however, is a sovereign immune governmental entity").

This matter involves information which should be protected at all costs including medical conditions, sexual orientation, mental health, and accusations of egregious criminal conduct constitute information of the utmost intimacy. *See Barron*, 531 So. 2d at 118. The underlying events giving rise to this action have already made a permanent and negative impact on Plaintiff's personal life and career. Publication of these allegations of sexual assault against a minor child—compounded by Plaintiff's sexual orientation—carry significant social stigma sufficient to warrant the protection of anonymity.

Taking into consideration the appalling accusations, each of which were fabricated, Plaintiff's privacy interest in shielding this sensitive information clearly outweighs any presumption of openness in judicial proceedings. Further, proceeding pseudonymously does not prejudice Defendant or impair its ability to litigate this case. Plaintiff's real name and identifying information will be disclosed to the Court under seal and made available to Defendant through appropriate channels, ensuring a fair judicial proceeding for all parties involved.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court grant this motion for leave to proceed anonymously and permit all future filings and proceedings to refer to him accordingly.

Dated: August 15, 2025

**RESPECTFULLY SUBMITTED**,

JOHN PIERCE LAW P.C.

*Andrew M. Green*

Andrew M. Green, Esq.

3

21550 W. Oxnard Street, 3rd Floor
Woodland Hills, CA 91367 Tel:
(516) 474- 4278
andrew@johnpiercelaw.com
*Counsel for Plaintiff*

**IN THE CIRCUIT COURT FOR THE SEVENTEENTH JUDICIAL CIRCUIT, IN AND FOR BROWARD COUNTY, FLORIDA**

JOHN DOE,

*Plaintiff,*

v.

SCHOOL BOARD OF
BROWARD COUNTY

*Defendant.*

_____/

**CASE NUMBER:** CACE-25-012259
**DIVISION:** Circuit Civil

**THE STATE OF FLORIDA:**

To All and Singular the Sheriffs of said State:

**YOU ARE HEREBY COMMANDED** to serve this Summons, a copy of the Complaint or Petition in this action, on Defendant:

SCHOOL BOARD OF BROWARD COUNTY

By Serving its Registered Agent at:

600 SE 3rd Ave
Fort Lauderdale, FL 33301

Defendant is required to serve written defenses to the Complaint or petition on ANDREW M. GREEN, ESQ., Plaintiff's attorney, whose address is 21550 Oxnard Street, 3rd Floor PMB #172, Woodland Hills, California 91367, within twenty (20) days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a Default will be entered against that Defendant for the relief demanded in the complaint or petition.

WITNESS my hand and Seal of said Court.

AUG 18 2025

BRENDA D. FORMAN
As Clerk of said Court

Dated: _____
BY:_____

BRENDA D. FORMAN

**IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN
AND FOR BROWARD COUNTY, FLORIDA**

**JOHN DOE,**

*Plaintiff,*

v.

**SCHOOL BOARD OF BROWARD COUNTY**

*Defendant.*

_____/

## COMPLAINT

COMES NOW, Plaintiff, John Doe, files this Complaint for both legal and equitable relief

against Defendant, School Board of Broward County, and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for damages brought by Plaintiff John Doe against the School Board of
   Broward County arising from Defendant's negligence, intentional infliction of emotional
   distress, and violation of his federal civil rights under 42 U.S.C. § 1983.

2. Plaintiff has exhausted all administrative remedies and received a Notice of Right to Sue
   on July 22, 2025, from the U.S. Department of Justice, granting permission to initiate this
   lawsuit.

3. Plaintiff, a dedicated Business Education teacher who has also served over forty years as a
   National Child Advocate on behalf of abused and neglected children, was subjected to an
   internal investigation after receiving a series of persistent threats intended to "destroy and
   take everything" away from him. These threats were immediately followed by false
   allegations of sexual misconduct by a student, which persisted for over a year despite
   consistent exonerations by independent law enforcement and state agencies.

1

4.  Defendant's actions, characterized by a lack of due diligence, failure to address known threats to "destroy his life and take everything he has," cyberstalking, disregard for Plaintiff's well-being and exculpatory evidence, not only severely exacerbated his preexisting debilitating medical conditions, but also led to the onset of a new neurological condition commonly known as Todd's Paralysis. The emergence of neurological damage in Plaintiff's brain and nervous system has resulted in frequent seizures and hospitalizations. The coexistence of Plaintiff's FND (Functional Neurological Disorder), frequent paralysis and seizures has led to the prognosis of SUDEP (Sudden Unexpected Death in Epilepsy) and caused Plaintiff to be granted medical leave in grave concern for his wellbeing.

5.  As a direct result of the immense stress and emotional distress caused by Defendant's conduct, Plaintiff suffered profound personal devastation, including the loss of custody of his adopted daughter on April 30, 2024, due to reputational harm from the prolonged investigation.

6.  Plaintiff seeks to hold Defendant accountable for its failures and to recover compensatory damages for the severe physical, emotional, and financial harm inflicted upon him.

7.  Given the highly sensitive and private nature of the allegations, the profound and ongoing medical trauma suffered by Plaintiff, and the devastating impact on his family, Plaintiff intends to seek leave from this Honorable Court to proceed anonymously, or by pseudonym, to protect his privacy and prevent further harm to his well-being.

## PARTIES

8. At all times material hereto, Plaintiff, John Doe, is an individual over the age of eighteen residing in Broward County, Florida and was employed as a teacher by the School Board of Broward County, Florida.

9. At all times material hereto, Defendant, School Board of Broward County, is a political sub-division of the State of Florida that oversees the operation of all public schools in Broward County, Florida, pursuant to Article IX, Section 4 of the Florida Constitution and Fla. Stat. § 1001.32.

## WAIVER OF SOVEREIGN IMMUNITY

10. Pursuant to Fla. Stat. § 768.28, Plaintiff served a Notice of Intent to Sue on the School Board of Broward County on or about February 18, 2025.

11. In further compliance with § 768.28(6)(c), Florida Statutes, the written notice included Plaintiff's date and place of birth and social security number.

12. On March 5, 2025, the matter was turned over to the School Board's insurance carrier, Davies North America.

13. On March 24, 2025, the matter was transferred to the School Board's assigned counsel, Anastasia Protopapadakis.

14. Counsel had an initial meet and confer on April 10, 2025 addressing the present matter.

15. Thereafter on April 14, 2025, to avoid using judicial resources and resolve the matter amicably, a demand letter and settlement offer were sent to Ms. Protopapadakis. Counsel confirmed receipt the same day.

16. On April 30, 2025 Plaintiff's counsel followed up with Protopapadakis in an effort to cooperate and efficiently resolve the matter.

17. Without any response, Plaintiff's counsel followed up once again on May 7, 2025, asking for Protopapadakis to confirm whether or not the matter would be resolved and if judicial resources would be necessary.

18. Defendant's counsel never engaged in meaningful correspondence after an initial meet and confer.

19. Thus, any sovereign-immunity defenses are thereby waived.

### CHARGE FILING AND NOTICE OF RIGHT-TO-SUE

20. On April 4, 2025, Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") with the intent to file a lawsuit under federal law alleging discrimination based on sexual orientation against Defendant.

21. On June 18, 2025, the EEOC closed its investigation. The request for the issuance of a Notice of Right to Sue was then forwarded to the U.S. Department of Justice.

22. On July 22, 2025, Plaintiff received the right to file this lawsuit from the U.S. Department of Justice.

23. Thus, Plaintiff has satisfied all requisite administrative proceedings and may plead causes of action under federal law.

### JURISDICTION AND VENUE

24. This Court has jurisdiction over the subject matter of this action pursuant to Florida Statute § 26.012(2)(a), granting this circuit court jurisdiction in all actions at law not cognizable by the county courts.

25. This Court has concurrent jurisdiction over the federal claims brought.

26. Venue is proper in this Court pursuant to Florida Statute § 47.011, as the events giving rise to this action occurred within Broward County, Florida.

### FACTUAL ALLEGATIONS

27. Plaintiff is an African American male and identifies as a homosexual.

28. Plaintiff is a member of multiple protected classes based on his race, gender, and sexual orientation.

29. At all times material hereto, Plaintiff John Doe was employed as a Business Education teacher, instructing a class called "Jobs for Graduates," at Hollywood Hills High School, a school operating under the authority and oversight of the School Board of Broward County.

30. In or about mid-November 2023, a juvenile student ("the Student") began serving as a secretary for Plaintiff's "Jobs for Graduates" class.

31. Prior to the formal allegations, Plaintiff had verbally disciplined the Student for cyberstalking and searching for Plaintiff's addresses and family members online, along with attempts to threaten him with information about his marriage. Before Plaintiff could submit the disciplinary referral for inappropriate use of technology and cyber stalking crime, the Student knowingly circumvented disciplinary action by making false allegations. At this time, campus security specialists, Cedric Golden and Shakevia Garland, witnessed Plaintiff advising the Student that it was important to listen and follow directions.

32. On or about January 18, 2024, after school hours, the Student was in Plaintiff's classroom, having missed his bus. Video surveillance confirmed their presence alone in the classroom from 14:50 to 15:44. The Student later alleged uncomfortable physical contact and conversations regarding sexuality, including Plaintiff standing between his legs, hugging him, making statements about finding him attractive, and touching his buttocks. The Student reported pushing Plaintiff away and telling Plaintiff, "You trippin," while another teacher, (with whom he shares a room divided by a swing door), was present as evident on

5

camera, and heard no such remarks from student nor witnessed any of the alleged fictional conduct.

33. At approximately 15:44 on January 18, 2024, Plaintiff and the Student were observed on school video surveillance exiting campus together in Plaintiff's red Dodge Ram pickup truck, with the Student in the back right seat. The Student later claimed they stopped for McDonald's and that Plaintiff stated he "isn't a pedo" during the ride to his residence, where they arrived shortly after 16:20.

34. On or about January 19, 2024, at approximately 11:30, the Student alleged another uncomfortable encounter with Plaintiff in his classroom, stating that he walked out after an argument about FPL payments and that Plaintiff followed him into the hall, lecturing him and stating, "You might just be a lost cause."

35. On or about January 23, 2024, the Student first disclosed his allegations to teacher Ms. Estiven, describing alleged inappropriate physical contact (e.g., brushing of groin, slapping buttocks, strong hugs with pelvis pushing forward) and conversations about his sexuality by Plaintiff. The Student initially stated he only wanted a schedule change and had asked his father to change schools for a "fresh start" due to a desire to be a "better person," which his father denied.

36. On or about January 24, 2024, at approximately 14:26, the Hollywood Police Department was made aware of the situation. Upon receiving the Student's allegations, Defendant immediately removed Plaintiff from his teaching position, implemented protective steps to ensure no contact with students, and reassigned him to a warehouse on paid administrative leave.

37. On or about January 24, 2024, Plaintiff was confronted by school administration (including Principal Daniel Most), with a union representative present, regarding the allegations. Plaintiff stated that the Student had told him, *"I'm going to destroy you and take everything you have."* Plaintiff was given 24 hours to provide a written statement, but was unable to do so due to the sudden onset of stress-related medical issues and abrupt seizure that occurred shortly thereafter.

38. On or about January 25, 2024, law enforcement made contact with the Student, who reiterated his allegations regarding conversations about sexuality, hugs, and specific physical contact on January 18, 2024.

39. On or about January 26, 2024, the Hollywood Police Department made contact with another juvenile student, who advised that Plaintiff had been giving him rides to and from school since October 2023, describing the relationship as "father and son like." This student stated that the alleged victim was a "liar" and that he "doesn't know why he would make this up," describing the alleged victim as "strange."

40. Defendant initiated an internal investigation into the Student's allegations, with the Hollywood Police Department and the Florida Department of Children and Families (DCF) also conducting parallel investigations.

41. On or about April 11, 2024, Defendant completed its internal investigation, concluding within 77 days, including 7 holidays, in accordance with Policy 4.9. However, the investigation remained unresolved pending Professional Standards Committee (PSC) review.

42. On or about May 14, 2024, the Hollywood Police Department released its final report (OCA 33-2401-011599), with Detective Perez determining that the Student's statements were inconsistent, noting that "two written statements were provided by the juvenile, and all

7

allegations were inconsistent from what was told to various staff members and investigators."

See EXHIBIT 1.

43. On or about June 26, 2024, the Florida Department of Children and Families found "no indicators" of abuse regarding the allegations against Plaintiff.

44. On or about August 12, 2024, the Florida Department of Education determined that no probable cause existed to pursue disciplinary action against Plaintiff.

45. Throughout the investigation, Plaintiff suffered severe medical issues, including a seizure disorder diagnosed on August 1, 2024, with FND and Neurological Damage (Todd's Paralysis) and consequently, a fatal prognosis of likelihood of Sudden Unexpected Death in Epilepsy (SUDEP) any day, without warning during his sleep. His diagnosis has been accompanied by an onset of stuttering, vocabulary recall, and short-term memory loss, which is exacerbated by the prolonged stress. Plaintiff submitted medical documentation to the Defendant, highlighting the foreseeability of his condition worsening.

46. The prolonged investigation, combined with Defendant's failure to reinstate Plaintiff despite exculpatory findings, caused significant stress and emotional distress, worsening his medical conditions and forcing him to take medical leave.

47. As a direct result of the immense stress and Defendant's actions, Plaintiff suffered the tragic loss of custody of his adopted daughter on April 30, 2024. Plaintiff had adopted this daughter on Father's Day, June 18, 2023, in Florida, and has three biological children and four adopted children.

48. Plaintiff exhausted his paid time off (PTO) and leave time due to his medical condition and the administrative leave/reassignment, necessitating unpaid leave starting August 7, 2024.

49. On May 29, 2024, the PSC met and initially recommended a five-day suspension, later revised to termination on August 2, 2024, despite the Superintendent's designee

determining on January 29, 2025, that "an insufficient factual or legal basis exists to establish just cause for inappropriate conduct," thereby closing the case.

50. As a result of the investigation, the underlying incident, and the hostile work environment that followed, Plaintiff began experiencing psychogenic seizures and severe emotional distress. Consequently, he was approved for protected leave under the Family and Medical Leave Act (FMLA) from August 5, 2024, through November 5, 2024.

51. Following his FMLA leave, Plaintiff was approved for medical leave by MetLife and remained on medical leave from November 5, 2024, through January 30, 2025.

52. On January 30, 2025, Plaintiff was directed to return to his teaching position. However, due to ongoing medical issues, he was unable to resume his duties.

53. Despite Plaintiff's earnest attempt to return to work, he experienced a serious medical episode within two weeks of returning to campus and was rushed to the hospital.

54. He was subsequently approved for a leave of absence for the remainder of the 2024–2025 school year, beginning April 16, 2025.

55. The Defendant's actions and inactions caused Plaintiff severe physical, emotional, and financial harm, including loss of his part-time job at the Boys and Girls Club due to reputational damage from the public investigation records released on February 8, 2025, and retaliatory denial of classroom reintegration despite exoneration.

## COUNT I: NEGLIGENCE

56. Plaintiff hereby realleges and incorporates by reference each and every allegation contained in the previous paragraphs as though fully set forth herein.

57. As both the Plaintiff's employer and the entity responsible for the conduct of its investigations, Defendant owed Plaintiff a duty of care to conduct a reasonable, timely, good faith, and impartial investigation into the allegations made against him to protect his well-being and to act in good faith.

58. Defendant breached its duty of care to Plaintiff by, among other things:

    a. Unreasonably prolonging its investigation for over a year, despite receiving definitive findings from the Hollywood Police Department (May 14, 2024), the Florida Department of Children and Families (June 26, 2024), and the Florida Department of Education (August 12, 2024), all of which invalidated the Student's allegations.

    b. Failing to adequately investigate and address the known pattern of cyberstalking and threats made by the Student against Plaintiff, documented as early as November 2023, despite the Student's prior threat to "destroy" Plaintiff and "take everything" he has.

    c. Ignoring or improperly weighing the clear and documented evidence of the Student's inconsistent statements and deliberate fabrication of facts, as noted by Detective Perez.

    d. Failing to act promptly to clear Plaintiff's name and reinstate him to his teaching position once external agencies confirmed the baseless nature of the allegations, delaying resolution until January 29, 2025.

e.  Demonstrating deliberate indifference to Plaintiff's continuously communicated and medically documented severe health conditions, which were foreseeably exacerbated by the prolonged and stressful investigation.

f.  Breaching its duty to safeguard Plaintiff's reputation and employment stability, resulting in the loss of his part-time job and significant income.

59. As a direct result of Defendant's negligence, Plaintiff suffered severe and enduring physical and emotional injuries, including a (new and more aggressive) continuation of his seizure disorder, increased frequency and intensity of seizures, repeated hospitalizations, profound emotional distress, anxiety, depression, insomnia, loss of appetite, severe reputational harm, loss of his part-time employment at the Boys and Girls Club, significant loss of income, and the loss of custody of his adopted daughter.

60. Plaintiff has incurred and will continue to incur substantial medical expenses as a result of required medical procedures, medical visits, at home monitoring, and medications.

61. Plaintiff has suffered substantial economic harm from lost wages and impairment of earning capacity, including but not limited to lost speaking engagements and the compromised release of his new book related to experiences with child abuse and neglect, as well as other economic and non-economic damages, including pain and suffering, mental anguish, and loss of enjoyment of life.

## COUNT II: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

62. Plaintiff hereby realleges and incorporates by reference each and every allegation contained in the previous paragraphs as though fully set forth herein.

63. The Defendant, through its agents, employees, and policies, engaged in extreme and outrageous conduct towards Plaintiff. Despite being aware of the multiple and consistent exculpatory findings from law enforcement and state agencies by May 14, 2024, Defendant

recklessly and without justification continued a baseless internal investigation, culminating in a termination recommendation on August 2, 2024, until overturned on January 29, 2025.

64. The Defendant's conduct was intentional or reckless, as evidenced by its failure to reinstate Plaintiff despite exoneration and its persistence to proceed with the investigation despite knowing the Student's allegations were inconsistent and motivated by a threat to "ruin [Plaintiff's] life."

65. The Defendant's conduct was carried out with the knowledge that severe emotional distress was a likely result, or with a reckless disregard for the high probability that such distress would follow, given Plaintiff's documented medical vulnerability and submitted medical documentation.

66. As a direct result of Defendant's conduct, Plaintiff suffered severe emotional distress, including but not limited to the worsening of his seizure disorder, frequent and debilitating seizures, hospitalizations, anxiety and depression, and the devastating loss of custody of his adopted daughter.

67. The emotional distress suffered by Plaintiff was severe, such that no reasonable person could be expected to endure it, as evidenced by his SUDEP risk and inability to resume teaching.

**COUNT III: VIOLATION OF 42 U.S.C. § 1983 (Deprivation of Rights)**

68. Plaintiff hereby realleges and incorporates by reference each and every allegation contained in the previous paragraphs as though fully set forth herein.

69. This is an action brought pursuant to 42 U.S.C. § 1983 for the deprivation of rights secured by the Fourteenth Amendment to the United States Constitution.

70. The Defendant's actions, including its prolonged investigation, failure to address the

Student's discriminatory motives and threats, and continued adverse employment actions (*e.g.*, reassignment to a warehouse and denial of reinstatement) despite exculpatory evidence, show a pattern of disparate treatment and a practice of discrimination against Plaintiff as a member of a protected class (based on sex/sexual orientation/perceived sexual orientation/race).

71. Defendant's conduct and treatment of Plaintiff throughout the investigation was motivated by Plaintiff's identity as a black homosexual male.

72. Throughout the investigation, Defendant constantly treated Plaintiff differently. Defendant's attitude and conduct towards Plaintiff were evidently rooted in bias. It was clear that Plaintiff's longstanding credibility was no longer relevant once Defendant got involved. Plaintiff was not given the presumption of truth as it pertained to the underlying situation with the Student. Critically, the attack to Plaintiff's reputation along with the way he was treated by Defendant began to negatively impact both his mental and physical health.

73. Had Plaintiff not been a member of that specific combination of protected classes, Defendant would not have given so much merit to Student's claims, thereby prolonging the investigation and subjecting Plaintiff to differential treatment and adverse employment actions.

74. Defendant's conduct denied Plaintiff his right to equal protection, causing him severe emotional distress, economic harm, and other damages.

75. As a direct and proximate result of the Defendant's violations of Plaintiff's constitutional rights, Plaintiff suffered severe damages, including but not limited to economic losses and non-economic damages (pain and suffering, emotional distress, reputational harm, loss of enjoyment of life, and the loss of custody of his adopted daughter).

## COUNT IV. VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (DISCRIMINATION REGARDING TERMS, CONDITIONS, OR PRIVILEGES OF EMPLOYMENT)

76. Plaintiff hereby realleges and incorporates by reference each and every allegation contained in the previous paragraphs as though fully set forth herein.

77. Plaintiff is a member of a protected class (based on sex/sexual orientation/perceived sexual orientation/race).

78. Defendant is an employer within the meaning of Title VII of the Civil Rights Act of 1964.

79. Plaintiff was subjected to unwelcome conduct, including but not limited to the false allegations instigated by the Student, the Student's cyberstalking, and the Student's comments related to Plaintiff's sexuality and threat to "ruin [John Doe's] life."

80. The conduct was sufficiently severe to alter the conditions of Plaintiff's employment and to create an objectively hostile work environment. This includes Defendant's failure to investigate and address the discriminatory nature of the Student's allegations and threats. This also includes Defendant's disparate treatment towards Plaintiff when the investigation ensued. Defendant's conduct towards Plaintiff was rooted in bias and resulted in both a disbelief and disregard of Plaintiff's story and account of events. Defendant's actions and negative attitude towards Plaintiff were not based in any legitimate reasoning, but rather on discriminatory presumptions arising from Plaintiff's sexual orientation in connection with Student's gender.

81. Defendant knew or should have known of the discriminatory conduct and failed to take prompt and effective remedial action. Instead, Defendant's actions in prolonging the investigation, failing to address the Student's discriminatory motives and threats, and continued adverse employment actions, despite exculpatory evidence and the clear biased nature of the Student's actions, contributed to and exacerbated the hostile environment.

82. As a direct and proximate result of Defendant's discrimination, Plaintiff suffered significant damages, including economic losses and non-economic damages (pain and suffering, emotional distress, reputational harm, loss of enjoyment of life, and the loss of custody of his adopted daughter).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, John Doe, respectfully requests that this Court:

a.        Enter judgment in favor of Plaintiff and against Defendant, School Board of Broward County, for compensatory damages in an amount to be determined at trial, including but not limited to past and future lost wages and earning capacity, past and future medical expenses, pain and suffering, mental anguish, emotional distress, loss of enjoyment of life, reputational harm, and the devastating loss of custody of his adopted daughter, all as more fully detailed in the preceding Counts;

b.        Award Plaintiff costs and reasonable attorneys' fees as permitted by law, including under 42

U.S.C. § 1983; and

c.        Grant Plaintiff such other and further relief as the Court deems just and proper.

Dated: August 15, 2025

**RESPECTFULLY SUBMITTED,**

**JOHN PIERCE LAW P.C.**

*Andrew M. Green*

Andrew M. Green, Esq.
Florida Bar No. 1058045
21550 W. Oxnard Street, 3rd Floor
Woodland Hills, CA 91367
Tel: (516) 474-4278
andrew@johnpiercelaw.com
*Counsel for Plaintiff*

15

**IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN
AND FOR BROWARD COUNTY, FLORIDA**

JOHN DOE,

*Plaintiff,*

v.

SCHOOL BOARD OF BROWARD COUNTY

*Defendant.*

_____/

Case No. CACE-25-012259

**COMPLAINT**

# EXHIBIT 1

## CASE SUPPLEMENTAL REPORT

33-2401-011599

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** INACTIVE                **Case Mng Status:** INACTIVE                **Occurred:** 01-18-2024

**Offense:** INFORMATION

| | |
|---|---|
| **Investigator:** ▓▓▓▓▓ | **Date / Time:** 05/14/2024 16:24:44 Tuesday |
| **Supervisor:** ▓▓▓▓▓ | **Supervisor Review Date / Time:** 05/14/2024 16:32:42 Tuesday |
| **Contact:** | **Reference:** Follow Up |

33-2401-011599

INFORMATION

5400 STIRLING ROAD (HOLLYWOOD HILLS HIGH SCHOOL)

STATUS: INACTIVE

DETECTIVE ▓▓▓▓▓

ON JANUARY 24TH, 2024, AT APPROXIMATELY 1426 HOURS, WHILE AT HOLLYWOOD HILLS HIGH SCHOOL, FOR AN UNRELATED EVENT, I WAS ADVISED BY THE SCHOOL RESOURCE OFFICER ▓▓▓▓▓ REGARDING AN ALLEGATION OF SEXUAL MISCONDUCT BETWEEN A TEACHER AND A JUVENILE STUDENT. I MET WITH SCHOOL BOARD INVESTIGATOR, ▓▓▓▓▓, THE SCHOOL PRINCIPAL, ▓▓▓▓▓, AND THE ASSISTANT PRINCIPAL, ▓▓▓▓▓ THEY PROVIDED ME WITH THE INITIAL ALLEGATION STATEMENTS AND ADVISED THEY WOULD BE CONDUCTING THEIR OWN INVESTIGATION. SCHOOL RESOURCE OFFICER, ▓▓▓▓▓, FOLLOWED UP AND THE FOLLOWING WILL BE A BRIEF SYNOPSIS OF THE INITIAL REPORT: OFFICER ▓▓▓▓▓ MADE CONTACT WITH THE JUVENILE MALE VICTIM ▓▓▓ WHO ADVISED HE WAS BEING MENTORED BY HIS TEACHER, MR. ▓▓▓▓▓ WHO TEACHES A "JOBS FOR GRADS" CLASS. HE FURTHER ADVISED THEY HAVE HAD MANY CONVERSATIONS ABOUT HIS PERSONAL PROBLEMS BUT SEXUALITY HAD ALSO BEEN A TOPIC OF CONVERSATION. THE JUVENILE STATED HE WAS OFTEN ALONE IN THE CLASSROOM WITH MR. ▓▓▓▓▓ AND HAS SAID THINGS THAT MADE HIM FEEL UNCOMFORTABLE LIKE: "IT WILL BE A MAGICAL MOMENT WHEN YOU FINALLY REALIZE WHO YOU ARE", "I FIND YOU ATTRACTIVE", AND "I THINK ABOUT YOU WHEN I'M AT HOME." THE JUVENILE MADE ALLEGATIONS STATING THAT MR. ▓▓▓▓ WOULD HUG HIM AND TELL HIM TO RELAX. HE RECALLED A SPECIFIC INCIDENT WHICH OCCURRED INSIDE OF MR. ▓▓▓▓▓ CLASSROOM #136, DURING AFTER-SCHOOL HOURS, WHERE THE JUVENILE WAS SITTING ON A HIGH STOOL BEHIND THE DESK AND MR. ▓▓▓ STOOD IN BETWEEN HIS LEGS, HUGGED HIM, TURNED HIS FACE, AND SAID "RELAX SON". DURING THE HUG WHICH ALLEGEDLY LASTED FOR 1-2 MINUTES, THE JUVENILE ALLEGED MR. ▓▓▓▓ HAD HIS PENIS PRESSING AGAINST HIS BUT BOTH WERE FULLY CLOTHED. THE JUVENILE STATED HE DIDN'T KNOW IF MR. ▓▓▓▓ HAD AN ERECTION BUT HE COULD SEE THE OUTLINE OF HIS PENIS BECAUSE HIS CLOTHES WERE TIGHT-FITTING. THE JUVENILE STATED HE TOLD MR. ▓▓▓▓ "YOU TRIPPIN', I DON'T FEEL VERY MANLY WHEN YOU TOUCH ME LIKE THAT" AND THEN MR. ▓▓▓ HUGGED HIM AND SLID HIS HANDS UP AND DOWN ON HIS BUTT ABOUT 3-4 TIMES, PLACING HIS HANDS IN BETWEEN HIS JEANS AND UNDERWEAR. THE JUVENILE ALLEGEDLY BROKE THE EMBRACE BY PUSHING HIM AWAY. AT APPROXIMATELY 1545 HOURS, MR. ▓▓▓▓ AND THE JUVENILE LEFT THE CAMPUS IN MR.

Investigator Signature                                    Supervisor Signature

Page 8

## CASE SUPPLEMENTAL REPORT

Printed: 05/15/2024 08:46

Hollywood Police Department

332401011599

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *INACTIVE*   **Case Mng Status:** *INACTIVE*   **Occurred:** *01/18/2024*

**Offense:** *INFORMATION*

| | |
|---|---|
| **Investigator:** ▮▮▮▮ | **Date / Time:** *05/14/2024 16:26:14, Tuesday* |
| **Supervisor:** ▮▮▮▮ | **Supervisor Review Date / Time:** *05/14/2024 16:32:17, Tuesday* |
| **Contact:** | **Reference:** *Follow Up* |

▮▮▮RED, DODGE RAM, STOPPED FOR MCDONALDS, AND DROPPED HIS OFF AT HOME. DURING THE DRIVE HOME, THE JUVENILE ALLEGED MR. ▮▮▮ STATED MULTIPLE TIMES, "I'M NOT A PEDO. I'M NOT A PEDO."

THE SECOND INCIDENT ALLEGEDLY OCCURRED ON FRIDAY, JANUARY 19TH, 2024, AT APPROXIMATELY 1130 HOURS, WHEN THE JUVENILE WENT TO MR. ▮▮▮ CLASSROOM AND MR. ▮▮▮ WAS ON HIS COMPUTER READING AN E-MAIL FROM FPL AND THE JUVENILE MADE A COMMENT ABOUT HIM BEING BEHIND ON PAYMENTS WHICH UPSET MR. ▮▮▮ THE JUVENILE DID NOT WANT TO ARGUE AND DECIDED TO WALK OUT OF THE CLASSROOM BUT MR. ▮▮▮ FOLLOWED HIM INTO THE HALLWAY AND "MADE IT LOOK LIKE HE WAS LECTURING HIM" AND THE JUVENILE STATED HE DIDN'T LIKE THE WAY THAT LOOKED OR FELT. MR. ▮▮▮ ALLEGEDLY STATED, "YOU MIGHT JUST BE A LOST CAUSE" AND WALKED BACK INTO HIS CLASSROOM. THE JUVENILE TOLD OFFICER ▮▮▮ THAT HE INITIALLY JUST WANTED A SCHEDULE CHANGE BUT HAS SINCE ASKED HIS FATHER TO CHANGE SCHOOLS BECAUSE HE WANTS A FRESH START AT A SCHOOL WHERE PEOPLE DIDN'T GIVE HIM A HARD TIME FOR WANTING TO BE A BETTER PERSON. HE ALSO STATED, THE PERSON HE WAS IN THE 9TH GRADE ISN'T WHO HE IS NOW NOR IS IT WHO HE WANTS TO BE.

THE JUVENILE DISCLOSED SIMILAR ALLEGATIONS TO HIS COUSIN AND ANOTHER TEACHER, ▮▮▮ THEIR STATEMENTS WERE SUBMITTED DIGITALLY AS EVIDENCE. CHILD PROTECTIVE SERVICES INVESTIGATOR ▮▮▮ RESPONDED TO HOLLYWOOD HILLS HIGH SCHOOL, AND MADE CONTACT WITH THE JUVENILE MALE AT HIS RESIDENCE.

ON JANUARY 24TH, 2024, MR. ▮▮▮ WAS CONFRONTED BY ADMINISTRATION AND INFORMED HIM OF THE ALLEGATIONS MADE AGAINST HIM BUT HE DID NOT PROVIDED A STATEMENT PER HIS UNION REPRESENTATIVE. HOWEVER, HE DID SAY THE JUVENILE TOLD HIM ONE DAY, "I'M GOING TO RUIN YOUR LIFE." MR. ▮▮▮ WAS ADVISED TO NOT MAKE CONTACT WITH ANY STUDENTS OR POTENTIAL WITNESSES UNTIL THE INVESTIGATION IS COMPLETE. AS OF JANUARY 26TH, 2024, MR. ▮▮▮ HAS YET TO PROVIDE A WRITTEN STATEMENT. THE BROWARD SCHOOLS POLICE INVESTIGATIVE UNIT HAS ATTEMPTED CONTACT TO OBTAIN THE SCHOOL KEYS AND ANY SCHOOL PROPERTY IN HIS POSSESSION BUT THEY HAVEN'T BEEN ABLE TO MAKE CONTACT BECAUSE HE HAS NOT ANSWERED THEIR PHONE CALLS. MR. ▮▮▮ HAS BEEN TEMPORARILY REASSIGNED PENDING FURTHER INVESTIGATION.

THE CAMPUS SECURITY SPECIALIST, ▮▮▮ REVIEWED THE SCHOOL'S VIDEO SURVEILLANCE AND CREATED A TIMELINE FOR THE MALE JUVENILE VICTIM AND MR ▮▮▮ CAMERA FOOTAGE DEPICTED THE FOLLOWING: ON 1/18/2024, THE MALE JUVENILE ENTERED

Investigator Signature _____        Supervisor Signature _____

**CASE SUPPLEMENTAL REPORT**    Printed: 05/14/2024 16:36

Hollywood Police Department    332401011599

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | |
|---|---|---|
| **Case Status:** INACTIVE | **Case Mng Status:** INACTIVE | **Occurred:** 01-18-2024 |
| **Offense:** INFORMATION | | |

| | |
|---|---|
| **Investigator:** ███████ | **Date / Time:** 05/14/2024 16:26:14, Tuesday |
| **Supervisor:** ███████ | **Supervisor Review Date / Time:** 05/14/2024 16:32:17, Tuesday |
| **Contact:** | **Reference:** Follow Up |

REPRESENTATIVE HAS ADVISED AGAINST IT. HE FURTHER STATED, HE WANTED TO SPEAK WITH A DETECTIVE ABOUT THE JUVENILE MALE WHO MADE THE ALLEGATIONS AGAINST HIM BUT HE WAS WAITING TO RECEIVE LEGAL ADVICE. MR. ████ ATTEMPTED TO TALK TO ME REFERENCE THE ALLEGATIONS BUT HE WAS INTERRUPTED AND TOLD THE ONLY WAY WE COULD HAVE A CONVERSATION WAS IF HE CAME TO POLICE HEADQUARTERS AND GAVE A STATEMENT.

MR. ████ ARRIVED TO THE HOLLYWOOD POLICE DEPARTMENT ON 02/20/2024 AT APPROXIMATELY 1715 HOURS AND SIGNED A STATEMENT OF RIGHTS FORM, INDICATING HE UNDERSTOOD HIS LEGAL RIGHTS PRIOR TO PROVIDING LAW ENFORCEMENT A STATEMENT. THE FOLLOWING WILL BE A BRIEF SYNOPSIS OF THE VIDEO/AUDIO RECORDED INTERVIEW: MR. ████ STATED HE UNDERSTOOD WHY HE WAS IN THE POSITION HE WAS IN BUT INITIALLY HAD RECEIVED MINIMAL INFORMATION REGARDING A STUDENT WHO MADE AN ALLEGATION ABOUT INAPPROPRIATE TOUCHING. UPON SPEAKING WITH THE PRINCIPAL, ████ HE WAS ABLE TO DECIPHER WHERE THESE ALLEGATIONS WERE COMING FROM. HE WAS ASKED WHAT HIS RELATIONSHIP WAS WITH THE JUVENILE MALE VICTIM AND HE REPLIED, "TEACHER-STUDENT." HE CURRENTLY HAS A TOTAL OF 142 STUDENTS FOR A GRANT-FUNDED CLASS THAT HE'S BEEN TEACHING FOR ABOUT FOUR YEARS. HE FURTHER STATED HE IS NOT A TEACHER BY TRADE BUT WITH HIS BUSINESS AND LEADERSHIP BACKGROUND, HE DECIDED TO RE-INVENT HIMSELF AFTER HIS DIVORCE ████ HE CLAIMS TO HAVE A HUGE SUCCESS RATE WITH THE TROUBLED TEENS/YOUTH AT HOLLYWOOD HILLS HIGH SCHOOL, WHICH IS WHY THE PROGRAM HAS CONTINUES TO BE FUNDED. HIS STUDENTS CONSIST OF THOSE WHO ARE STRUGGLING ACADEMICALLY, FINANCIALLY, AND EMOTIONALLY. WHEN ASKED HOW HIS STUDENTS WOULD DESCRIBE HIM HE RESPONDED, "UP UNTIL THIS, BECAUSE THIS COMPLETELY BLIND-SIDED ME, I WOULD SAY 142 OF THEM WOULD SAY HE'S EXTRAORDINARY AND WE LOOK FORWARD TO COMING TO HIS CLASS." MR. ████ WAS ASKED IF HE EVER DROVE THE JUVENILE ANYWHERE AND HE STATED, YES ON TWO OCCASIONS. THE FIRST TIME WAS AT THE JUVENILE'S PLACE OF EMPLOYMENT, ████ MR. ████ CONDUCTS WORK-SITE VISITS TO AFFIRM AND ENCOURAGE THE STUDENT TO BUILD GOOD WORK ETHIC BUT HE ALSO USES THAT OPPORTUNITY TO ASK THEIR MANAGERS FOR FEEDBACK ON WHAT CAN BE IMPROVED. DURING THIS SPECIFIC WORK-SITE VISIT, HE OBSERVED THE JUVENILE STANDING OUTSIDE THE RESTAURANT AND INFORMED MR. ████ HE HAD JUST BEEN FIRED FOR LYING TO A CUSTOMER ABOUT THE ICE-CREAM MACHINE BEING BROKEN. THE MANAGER OVERHEARD THE JUVENILE LYING TO THE CUSTOMER AND TOLD HIM TO APOLOGIZE AND MAKE THE CUSTOMER A MILKSHAKE, BUT HE REFUSED. MR. ████ ASKED THE JUVENILE WHY HE LIED ABOUT THE MILKSHAKE MACHINE AND HE SAID, "I DIDN'T FEEL LIKE MAKING IT." MR. ████ SPOKE WITH THE MANAGER AND WAS ABLE TO CONVINCE HER TO GIVE THE JUVENILE ANOTHER CHANCE, TO WHICH HE AGREED BUT HE STILL WAS SENDING HIM HOME EARLY. THE JUVENILE DID NOT HAVE A RIDE BACK HOME SO MR. ████ OFFERED TO GIVE HIM A RIDE SINCE HE LIVED NEAR HIS NEXT WORK-SITE VISIT WHICH WAS AT THE HOLLYWOOD

| | |
|---|---|
| ██████ | ██████ |
| Investigator Signature | Supervisor Signature |

Page 25

## CASE SUPPLEMENTAL REPORT

Printed: 05/15/2024  08:56

Hollywood Police Department

Case #: 332401011599

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** _INACTIVE_          **Case Mng Status:** _INACTIVE_          **Occurred:**  _01/18/2024_

**Offense:** _INFORMATION_

**Investigator:** ▮▮▮▮▮▮          **Date / Time:**  _05/14/2024 16:26:14, Tuesday_

**Supervisor:** ▮▮▮▮▮▮          **Supervisor Review Date / Time:**  _05/14/2024 16:32:17, Tuesday_

**Contact:** ▮▮▮▮▮          **Reference:**  _Follow Up_

HARD ROCK HOTEL.. MR. ▮▮▮▮ USED THAT TIME IN THE VEHICLE AS A MENTORING OPPORTUNITY TO DISCUSS WHAT TRANSPIRED AT ▮▮▮▮▮

THE SECOND TIME MR. ▮▮▮▮ GAVE THE JUVENILE A RIDE HOME WAS A TIME WHEN HE MISSED THE BUS AND HAD ASKED MR. ▮▮▮▮ FOR $10. MR. ▮▮▮▮ TOLD THE JUVENILE HE DOESN'T GIVE STUDENTS MONEY BUT THEN ASKED HIM WHAT HE NEEDED IT FOR BECAUSE HE WAS CONCERNED. THE JUVENILE TOLD MR. ▮▮▮▮ HE WANTED THE MONEY TO GET SOMETHING TO EAT BECAUSE HE WAS HUNGRY. MR. ▮▮▮▮ NEGOTIATED WITH HIM AND TOLD HIM HE WASN'T GOING TO GIVE HIM THE MONEY BUT OFFERED TO GET HIM MCDONALDS BEFORE DROPPING HIM OFF AT HOME.

MR. ▮▮▮▮ REPORTED SEVERAL INSTANCES WHERE THE JUVENILE HAS SAID INAPPROPRIATE THINGS REGARDING HIS PERSONAL LIFE. MR. ▮▮▮▮ IS IN A HOMOSEXUAL RELATIONSHIP WHICH HE NEVER DISCLOSED TO HIS STUDENTS BUT THE JUVENILE HAS ASKED MR. ▮▮▮▮ "WHO'S ▮▮▮?" AND HE REPLIED, "THAT'S NONE OF YOUR BUSINESS" AND THE JUVENILE STATED, "OH, IT'S JUST BETWEEN US (HA-HA) I AIN'T GON SAY NOTHIN TO NOBODY." A COUPLE OF WEEKS LATER, THE JUVENILE GETS MOVED TO THE POSITION OF CLASS SECRETARY FOR THE CLASS AND THERE'S A DESIGNATED SEAT FOR HIM TO WORK ON GRADES OR AWARDS THAT OTHER STUDENTS SHOULDN'T SEE. MR. ▮▮▮▮ WALKED BY HIS DESK AND SAW THE JUVENILE HAD BEEN SEARCHING MR. ▮▮▮▮ PERSONAL LIFE WHEN HE'S SUPPOSED TO BE WORKING ON HIS SOCIAL MEDIA PROJECT. MR. ▮▮▮▮ TOLD THE JUVENILE, "IF I SEE THAT I'M ON YOUR COMPUTER SCREEN AGAIN, I'M GOING TO WRITE YOU A REFERRAL." THE JUVENILE HAS ALSO MADE OTHER REMARKS REGARDING MR. ▮▮▮▮ PERSONAL LIFE LIKE, "YOU'VE HAD SUCH A GOOD CAREER AND I WANT TO BE LIKE YOU." AND QUESTIONING HIM ABOUT HIS EX-WIFE ▮▮▮▮ AT THIS POINT, MR. ▮▮▮▮ WAS FRUSTRATED AND DEEMED THE JUVENILE'S BEHAVIOR INAPPROPRIATE AND TOLD HIM, "WE'RE GONNA HAVE A CONVERSATION. REFERRAL TIME." TO WHICH THE JUVENILE REPLIED, "I ALREADY HAVE ENOUGH INFORMATION ABOUT YOU TO DESTROY YOU AND TAKE EVERYTHING YOU HAVE."

MR. ▮▮▮▮ RECALLED THE FOLLOWING SEQUENCE OF EVENTS PRIOR TO WHAT HE CLAIMS ARE FALSE ALLEGATIONS AGAINST HIM: ON THURSDAY, JANUARY 18TH 2024, THE JUVENILE WAS IN THE CLASSROOM AND SAID, "OH YOU'RE BUYING A JEEP?" AND MR. ▮▮▮▮ RESPONDED, "WHAT ARE YOU DOING LOOKING AT MY COMPUTER?" AND THE JUVENILE REPLIED "OH MY BAD, MY BAD." ON FRIDAY, JANUARY 19TH, 2024, IT WAS AN EARLY RELEASE DAY, AND THE JUVENILE MADE A COMMENT ABOUT HIS FPL BILL. MR. ▮▮▮▮ CONFRONTED THE JUVENILE AND TOLD HIM THIS WAS THE LAST TIME HE WAS GOING TO TELL HIM TO STOP LOOKING AT HIS

Investigator Signature          Supervisor Signature

## CASE SUPPLEMENTAL REPORT

Printed 05/15/2024 08:46

*Hollywood Police Department*                                                        #: 332401011599

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | |
|---|---|---|
| Case Status: *INACTIVE* | Case Mng Status: *INACTIVE* | Occurred: *01/18/2024* |
| Offense: *INFORMATION* | | |

| | | |
|---|---|---|
| Investigator: ███ | Date / Time: *05/14/2024 16:26:14, Tuesday* |
| Supervisor: ███ | Supervisor Review Date / Time: *05/14/2024 16:32:17, Tuesday* |
| Contact: | Reference: *Follow Up* |

COMPUTER AND THE JUVENILE REPLIED, "I'M NOT LOOKING AT YOUR COMPUTER" WHICH WAS OBVIOUSLY UNTRUE AND FRUSTRATED MR. ███ TO THE POINT HE TOLD THE JUVENILE TO LEAVE HIS CLASSROOM AND STARTED "GOING IN ON HIM HARD" ABOUT INTEGRITY AND HOW HE WAS NO LONGER GOING TO BE IN THE OFFICER POSITION. MR. ███ WAS PURPOSEFULLY POSITIONED IN THE HALLWAY WHEN HE WAS LECTURING THE STUDENT BECAUSE HE KNEW THERE WERE CAMERAS. THAT FRIDAY, THE JUVENILE LEAVES THE SCHOOL AT NOON AND THERE WAS NO SCHOOL ON MONDAY. MR. ███ WAS BUSY ON TUESDAY SO HE DID NOT GET AROUND TO WRITING THE REFERRAL AND ON WEDNESDAY MORNING, HIS PLANNING DAY, HE GETS CALLED INTO THE OFFICE AND RECEIVED NOTICE OF THE FALSE ALLEGATIONS MADE BY THE JUVENILE. MR. ███ STRONGLY BELIEVES THE JUVENILE WAS UPSET BECAUSE HE WAS BEING REPRIMANDED AND TRIED TO SEEK REVENGE AND/OR GET EVEN.

THE STATEMENTS MADE BY THE JUVENILE WERE INCONSISTENT. HE STATED MR. ███ DROVE HIM HOME FROM SEVERAL TIMES BUT IT WAS DETERMINED THAT MR. ███ ONLY DROVE THE JUVENILE HOME TWICE WITH HIS PARENT'S CONSENT. MR. ███ ALSO HAS BEEN GIVING ANOTHER JUVENILE STUDENT A RIDE TO AND FROM SCHOOL WHO WAS QUESTIONED AND STATED, ███ IS A LIAR. I DON'T KNOW WHY HE WOULD MAKE THIS UP." THE JUVENILE TOLD ONE TEACHER THAT MR. ███ "SLAPPED HIS ASS WHILE WALKING AWAY" BUT TOLD HIS COUSIN MR. ███ TOUCHED HIS BUTT, RUBBED HIS FACE, AND WHISPERED "YOU LIKE IT." HOWEVER, HE ALSO TOLD THE SCHOOL RESOURCE OFFICER MR. ███ CARESSED HIS CHEEK AND CALLED HIM BEAUTIFUL. THE JUVENILE ALLEGED MR. ███ WALKED BY HIM AND BRUSHED HIS PENIS AGAINST HIM, ALLEGED ANOTHER ACCOUNT OF MR. ███ STANDING BEHIND HIM AND FEELING HIS PENIS AGAINST HIM, BUT ALSO CLAIMED MR. ███ RUBBED HIS PENIS AGAINST HIM WHEN HE WAS SITTING ON A STOOL AND COULD SEE THE OUTLINE OF HIS PENIS BECAUSE HIS PANTS WERE TIGHT.. TWO WRITTEN STATEMENTS WERE PROVIDED BY THE JUVENILE AND ALL ALLEGATIONS WERE INCONSISTENT FROM WHAT WAS TOLD TO VARIOUS STAFF MEMBERS AND INVESTIGATORS.

THE SEVENTEEN-YEAR OLD VICTIM APPEARED TO BE EMBELLISHING REAL FACTS AND WAS EITHER COMPLETELY FALSIFYING AND/OR DELIBERATELY PROVIDING MISLEADING INFORMATION. FOR EXAMPLE, THE JUVENILE STATED MR. ███ TOLD HIM, "I FIND YOU ATTRACTIVE AND THINK ABOUT YOU WHEN I'M HOME." MR. ███ STATED, HE HAS MENTIONED TO HIS CLASS THAT HE FOUND HIMSELF THINKING ABOUT THEM WHILE AT HOME IN AN ACADEMIC SENSE AND THE STUDENTS AS A WHOLE, NOT INDIVIDUALLY AND NOT SEXUALLY. THE JUVENILE ALLEGED MR. ███ TURNED HIS FACE AND SAID "RELAX SON" BUT MR. ███ ADVISED THAT HE STANDS BY HIS DOOR AND MAKES EVERY STUDENT ENGAGE IN EYE-CONTACT WHILE SHAKING HIS HAND PRIOR TO ENTERING HIS CLASSROOM SO THEY GET ACCUSTOMED TO PROFESSIONAL CONTACT. THE JUVENILE ALLEGED MR. ███ TOOK HIM

Investigator Signature                        Supervisor Signature

Page 13

## CASE SUPPLEMENTAL REPORT

Printed 05/15/2024 08:46

*Hollywood Police Department* ................................ .... : *332401011599*

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | |
|---|---|---|
| Case Status: *INACTIVE* | Case Mng Status: *INACTIVE* | Occurred: *01/18/2024* |
| Offense: *INFORMATION* | | |

| | |
|---|---|
| Investigator: ██████ | Date / Time: *05/14/2024 16:26:14, Tuesday* |
| Supervisor: ██████████ | Supervisor Review Date / Time: *05/14/2024 16:32:17, Tuesday* |
| Contact: | Reference: *Follow Up* |

HOME SEVERAL TIMES BUT THE CAMPUS SECURITY SPECIALIST, ██████████ REVIEWED THE SCHOOL'S VIDEO SURVEILLANCE AND CREATED A TIMELINE FOR THE ONE TIME MR. ██████ DROVE THE JUVENILE HOME FROM SCHOOL, WHICH IS UPLOADED ON EVIDENCE.COM.

IT SHOULD ALSO BE CONSIDERED HOW THE JUVENILE STATED HE INITIALLY JUST WANTED HIS SCHEDULE CHANGED AND THEN WENT HOME OVER THE WEEKEND AND ASKED HIS FATHER TO CHANGE SCHOOLS. WHEN ASKED WHY, HE STATED HE WANTED A FRESH START. THE FATHER DENIED HIS REQUEST AND THEN THE JUVENILE MADE ALLEGATIONS AGAINST MR. ██████ THAT SAME WEEK.

DUE TO INSUFFICIENT EVIDENCE AND THE VICTIM'S INCONSISTENT STATEMENTS, THIS CASE WILL BE CLOSED AND CLASSIFIED AS INACTIVE.



Investigator Signature                    Supervisor Signature

Page 14

**FORM 1.997. CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

I. **CASE STYLE**

IN THE CIRCUIT/COUNTY COURT OF THE <u>SEVENTEENTH</u> JUDICIAL CIRCUIT, IN AND FOR <u>BROWARD</u> COUNTY, FLORIDA

Shane Salter
Plaintiff

Case # _____
Judge _____

vs.
School Board of Broward County
Defendant

II. **AMOUNT OF CLAIM**

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐ $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☒ over $100,000.00

III. **TYPE OF CASE** (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
       ☐ Business governance
       ☐ Business torts
       ☐ Environmental/Toxic tort
       ☐ Third party indemnification
       ☐ Construction defect
       ☐ Mass tort
       ☐ Negligent security
       ☐ Nursing home negligence
       ☐ Premises liability—commercial
       ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
       ☐ Commercial foreclosure
       ☐ Homestead residential foreclosure
       ☐ Non-homestead residential foreclosure
       ☐ Other real property actions

☐Professional malpractice
       ☐ Malpractice—business
       ☐ Malpractice—medical
       ☐ Malpractice—other professional
☒ Other
       ☐ Antitrust/Trade regulation
       ☐ Business transactions
       ☐ Constitutional challenge—statute or ordinance
       ☐ Constitutional challenge—proposed amendment
       ☐ Corporate trusts
       ☐ Discrimination—employment or other
       ☐ Insurance claims
       ☐ Intellectual property
       ☐ Libel/Slander
       ☐ Shareholder derivative action
       ☐ Securities litigation
       ☐ Trade secrets
       ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

    **IV.**    **REMEDIES SOUGHT** (check all that apply):
    ☒ Monetary;
    ☒ Nonmonetary declaratory or injunctive relief;
    ☐ Punitive

    **V.**    **NUMBER OF CAUSES OF ACTION:** [   ]
    (Specify)

      <u>4</u>

    **VI.**    **IS THIS CASE A CLASS ACTION LAWSUIT?**
        ☐ yes
        ☒ no

    **VII.**    **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
        ☒ no
        ☐ yes If "yes," list all related cases by name, case number, and court.

    **VIII.**    **IS JURY TRIAL DEMANDED IN COMPLAINT?**
        ☒ yes
        ☐ no

    **IX.**    **DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
        ☐ yes
        ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ Andrew Green</u>        Fla. Bar # <u>1058045</u>
        Attorney or party                  (Bar # if attorney)

<u>Andrew Green</u>        <u>08/15/2025</u>
 (type or print name)        Date

## VERIFIED RETURN OF SERVICE

**State of Florida**                **County of Broward**                **Circuit Court**

Case Number: CACE 25-012259

Plaintiff:
**JOHN DOE**

LTS2025004270

vs.

Defendant:
**SCHOOL BOARD OF BROWARD COUNTY**

For:
Andrew M. Green, Esq.
John Pierce Law, P.C.

Received by Top Legal Services on the 20th day of August, 2025 at 12:13 pm to be served on **SCHOOL BOARD OF BROWARD COUNTY, 600 SE 3RD AVENUE, FORT LAUDERDALE, FL 33301**.

I, Rahul K. Singh, do hereby affirm that on the **21st day of August, 2025** at **12:56 pm, I:**

served an **AUTHORIZED** entity by delivering a true copy of the **Summons and Complaint** with the date and hour of service endorsed thereon by me, to: **Theresa Coleman** as **Administrative Assistant** at the address of: **600 SE 3RD AVENUE, FORT LAUDERDALE, FL 33301**, who stated they are authorized to accept service for **SCHOOL BOARD OF BROWARD COUNTY**, and informed said person of the contents therein, in compliance with state statutes.

**Military Status:** Based upon inquiry of party served, Defendant is not in the military service of the United States of America.

**Description** of Person Served: Age: 55, Sex: F, Race/Skin Color: White, Height: 5'6", Weight: 160, Hair: Salt & Pepper, Glasses: Y

Under Penalties of perjury, I declare that I have the forgoing and that the facts stated in it are true. I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the county in which service was affected in accordance with State Statutes.

**Rahul K. Singh**
SPS # 1670

**Top Legal Services**
**15800 Pines Boulevard**
**Suite 333**
**Pembroke Pines, FL 33027**
**(954) 812-9229**

Our Job Serial Number: LTS-2025004270

Copyright © 1992-2025 DreamBuilt Software, LLC. - Process Server's Toolbox V9.0e